# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **PEGATRON TECHNOLOGY SERVICE, INC.**, <br><br>    Plaintiff<br><br> v.<br><br>**ZURICH AMERICAN INS. CO. and AMERICAN GUARANTEE & LIABILITY INS. CO.**,<br><br>    Defendants<br><br> v.<br><br>**JANE DOE**,<br><br>    Nonparty Subpoena Recipient. | Case No. 3:19-mc-00315-SI<br><br>**OPINION AND ORDER ON NONPARTY JANE DOE'S MOTION TO QUASH OR MODIFY DEPOSITION SUBPOENA AND FOR PROTECTIVE ORDER**<br><br>[Pending in the U.S. District Court for the Northern District of California, Case No. 5:18-cv-01477-LHK] |

Michael L. Rosenbaum, ROSENBAUM LAW GROUP, 1826 NE Broadway Street, Portland, OR 97232. Of Attorneys for NonParty Movant Jane Doe.

Alexander F. Stuart, Ellyn E. Nesbit, and Scott Stuart, WILLOUGHBY, STUART, BENING & COOK, Fairmont Plaza, 50 West San Fernando Street, Suite 400, San Jose, CA 95113. Of Attorneys for Plaintiff Pegatron Technology Service, Inc.

Susan K. Sullivan, CLYDE & CO. US LLP, 355 South Grand Avenue, Suite 1400, Los Angeles, CA 90071; Christian Johnson, CLYDE & CO. US LLP, 101 Second Street, Twenty-Fourth Floor, San Francisco, CA 94105. Of Attorneys for Defendant American Guarantee & Liability Insurance Company.

PAGE 1 – OPINION AND ORDER

**Michael H. Simon, District Judge.**

In this matter, the Court is called upon to balance the legitimate discovery needs of a defendant in a civil lawsuit pending in another district with the legitimate privacy needs of a nonparty witness, located in this district, who seeks to avoid or minimize embarrassment, oppression, and undue burden arising from a deposition subpoena issued under Rule 45 of the Federal Rules of Civil Procedure.

## BACKGROUND[1]

### A. Doe Suffers Injury and Asserts Claim Against Customer

On January 14, 2016, a woman, whom the parties refer to as "Jane Doe" ("Doe") for reasons of confidentiality, appears to have suffered the publication of extremely personal and private material without her consent. According to Doe, she sent one of her electronic devices to a business for repair. For reasons of confidentiality, the parties refer to that business as "Customer." Shortly after Doe sent her electronic device to Customer for repair, certain extremely personal and private material contained on that device was uploaded by someone to Doe's Facebook account and other internet locations without her permission. After Doe learned about this from a friend, Doe contacted Customer, who promptly took Doe's personal and private material offline.

On January 25, 2016, Doe's lawyer sent a letter to Customer, notifying Customer of Doe's claim. On February 4, 2016, Doe's lawyer sent a second letter to Customer, threatening to file a lawsuit for invasion of privacy and negligent infliction of emotional distress. Among other

---

[1] The following background is taken largely from the declarations and exhibits filed by the nonparty movant and the party opposing the pending motion. The party opposing the motion also separately raises several evidentiary objections to the Declaration of Michael Rosenbaum filed in support of the motion. The Court bases its ruling only on admissible evidence and will not separately address each evidentiary objection.

things, Doe's lawyer stated that Doe would be seeking non-economic and punitive damages in the range of nine figures. In that letter, Doe's lawyer offered to settle with Customer for a specific multi-million-dollar sum, if Customer accepted that demand within 30 days. Doe's lawyer added that a prompt settlement would assist Customer in avoiding the negative media publicity that almost certainly would accompany Doe's lawsuit against Customer.

Customer had several technical service contracts with Pegatron Technology Service, Inc. ("PTSI"). PTSI's parent company is Pegatron Corporation. Shortly after receiving the letters from Doe's lawyer, Customer tendered to PTSI and Pegatron the defense and indemnification of Doe's claim against Customer. According to Customer, under the terms of PTSI's service contracts with Customer, PTSI had a duty to defend and indemnify Customer against Doe's claim because Doe's asserted personal injury arose from technical services that PTSI had contracted to perform for Customer. PTSI and Pegatron promptly tendered Customer's claim to their insurers, Zurich American Insurance Company ("Zurich") and American Guarantee & Liability Insurance Company ("AGLIC").

## B. Doe Settles with Customer

In February 2016, Doe and Customer entered into a "Binding Mediation Agreement." Under this agreement, Doe waived her right to bring a lawsuit against Customer or any other individual or entity arising out of the underlying incident, including waiving any claims that Doe could assert against PTSI or Pegatron. Doe and Customer selected as their mediator a highly respected retired state court trial judge. Doe and Customer researched jury awards and settlements in matters with similar facts. They agreed that Customer was liable to Doe. They also agreed to enter into a mediation within a specific high and low settlement range. Doe and Customer further agreed that if they could not reach a settlement with the assistance of the mediator by March 22, 2016, the mediator would then be authorized to act as a final

decisionmaker and select a binding settlement amount within the agreed-upon high and low range. (This feature of the agreement explains why the parties refer to their agreement as a "Binding Mediation Agreement.") In addition to Doe, PTSI, and their respective counsel, an attorney representing AGLIC and Zurich attended the mediation. In an email dated March 4, 2016, from counsel for AGLIC and Zurich to counsel for PTSI, the insurers requested information that would substantiate Doe's claimed damages as well as a "liability exposure analysis." Regarding the proposed settlement between Doe and Customer, the insurers agreed not to assert as a defense to coverage the "no voluntary payments" condition contained in the insurance policies, but the insurers expressly reserved their rights to challenge the reasonableness of any settlement that may be reached.

After Doe and Customer were unable to agree upon a settlement figure, the mediator determined the final settlement amount within the agreed-upon high and low range, pursuant the Binding Mediation Agreement. The specific settlement amount is confidential, but all parties appear to be treating that figure as quite substantial. In late March and early April 2016, Zurich denied defense and indemnity coverage to PTSI under Zurich's several policies. In late April 2016, AGLIC denied defense and indemnity coverage to PTSI under AGLIC's policy.

On June 13, 2016, Customer entered into a final written settlement agreement with Doe ("Settlement Agreement"). The Settlement Agreement includes a provision titled, "'Non-Assistance with Any Claim or Litigation Against [Customer] or Others." That provision reads, in relevant part: "Other than what may be required of her by law or a lawful order of a court of competent jurisdiction, [Doe] will not assist any individual or entity in any manner in bringing, maintaining, or advancing any claim or litigation regarding the Released Matters." The Settlement Agreement also includes a confidentiality provision that addresses only the

PAGE 4 – OPINION AND ORDER

Settlement Agreement and its terms, a related fee agreement and its terms, and the "communications relating to either agreement's terms, conditions, or negotiation, or the mediation between the parties." The confidentiality provision expressly states that it does not apply to "other legal proceedings" as may be required by law or to PTSI's insurers.

**C. Customer Settles with PTSI and Pegatron, and Pegatron Sues Zurich and AGLIC**

On July 15, 2016, Customer entered into a written settlement agreement with PTSI. Under that agreement, PTSI promised to indemnify Customer for Customer's obligation to pay Doe the settlement amount that was determined by the mediator. Customer also agreed to waive its right to seek reimbursement of Customer's attorney's fees and costs incurred in defending against Doe's claim.

On December 27, 2017, Pegatron sued both Zurich and AGLIC in California state court. Defendants removed that lawsuit to federal court. That action, *Pegatron Technology Service, Inc. v. Zurich American Insurance Company, American Guarantee & Liability Insurance Company, and DOES 1 through 100*, Case No. 5:18-cv-01477-LHK (N.D. Cal.) ("*Pegatron* Lawsuit"), is pending in the U.S. District Court for the Northern District of California. In the *Pegatron* Lawsuit, Pegatron alleges breach of insurance contract, insurance bad faith, and equitable contribution, subrogation, and indemnity. (It appears that Zurich is no longer actively involved in the *Pegatron* Lawsuit.)

**D. AGLIC Demands Doe's Deposition in the *Pegatron* Lawsuit**

It appears that the parties in the *Pegatron* Lawsuit are nearing the close of discovery. On March 17, 2019, counsel for AGLIC sent an email to Doe's counsel to advise that AGLIC seeks to depose Doe. AGLIC's inquired whether a deposition on April 9, 2019 in Portland, Oregon would be a convenient date and location for Doe, who lives in Oregon, and whether Doe's counsel will accept service of AGLIC's deposition subpoena. Doe's counsel did not respond. On

March 22, 2019, AGLIC's counsel sent a second email to Doe's counsel, with essentially the same information, although the requested date for Doe's deposition was now April 10, 2019.

Doe's lawyer responded with a letter dated March 27, 2019. In that letter, Doe's lawyer stated that Doe objected to any deposition and would not appear. Doe's lawyer explained that the "matter sought to be inquired involves extremely personal and private issues that are protected from discovery." Doe's lawyer also stated that "the subject matter of the inquiry is governed by a confidentiality agreement which precludes the client from voluntarily discussing the case." On March 28, 2019, AGLIC's counsel and Doe's counsel spoke by telephone. Doe's counsel reiterated that Doe would not appear for a deposition unless required by court order but would be willing to provide responses to written interrogatories.

On April 1, 2019, AGLIC's counsel sent a letter to Doe's counsel. AGLIC's explained that AGLIC had already served a deposition subpoena on Doe, requiring her presence in Portland on April 10, 2019, but AGLIC's counsel offered to move that date to another day in April or even during the first two weeks of May to accommodate Doe and her counsel. AGLIC also disputed Doe's right to make a "blanket objection based on privacy" and disputed the argument that Doe's confidentiality agreement with Customer precluded her answering AGLIC's questions at deposition. AGLIC's subpoena required Doe to appear for a deposition in Portland, which is not far from where she lives but is more than 100 miles from the federal court in which the underlying *Pegatron* Lawsuit is pending.

On April 9, 2019, Doe filed a motion in federal court in Portland, seeking to quash or modify AGLIC's deposition subpoena. Doe also seeks a protective order from this Court. Because AGLIC's subpoena demanded Doe's appearance on April 10, 2019, the Court

PAGE 6 – OPINION AND ORDER

provisionally granted Doe's motion, subject to reconsideration after expedited briefing. AGLIC responded on April 17, 2019, and Doe filed her reply on April 23, 2019.[2]

## STANDARDS

Rule 45 of the Federal Rules of Civil Procedure governs discovery of nonparties by subpoena. Fed. R. Civ. P. 45. This includes subpoenas that require nonparties to attend a deposition, in which that party must answer questions under oath. The rule also provides, among other things, that a federal court in the district where compliance is required "must" quash or modify a subpoena that "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). In considering when a burden is undue, Rule 26 is relevant and should be considered. *Exxon Shipping Co. v. U.S. Dept. of Interior*, 34 F.3d 774, 779 (9th Cir. 1994) (applying both Rule 26 and Rule 45 standards when deciding a motion to quash subpoena).

Rule 26 states the general provisions governing discovery in civil actions pending in federal court. Rule 26(b)(1) permits parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). The court, however, may issue a protective order to limit discovery. Rule 26(c)(1) addresses protective orders. It provides:

> (1) In General. A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending—or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. . . . The court may, for good cause, issue an order to protect a party or person from *annoyance, embarrassment, oppression, or undue burden or expense*, including one or more of the following:

---

[2] Shortly after Doe filed her reply, the Court attempted to schedule oral argument. The parties, however, were unavailable before the second week in May, and AGLIC reported that the discovery period in the *Pegatron* Lawsuit would soon close. The Court then decided to rule on the pending motion based on the parties' briefs, without the benefit of oral argument, resulting in this Opinion and Order.

>>    (A)   forbidding the disclosure or discovery;
>
>      \*   \*   \*
>
>    (C)   prescribing a discovery method other than the one selected by the party seeking discovery;
>
>    (D)   forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;
>
>    (E)   designating the persons who may be present while the discovery is conducted;
>
>    (F)   requiring that a deposition be sealed and opened only on court order;

Fed. R. Civ. P. 26(c)(1).

Courts have "broad latitude" to issue a protective order to "protect a party or person from annoyance, embarrassment, oppression, or undue burden." *deBarros v. Walmart Stores, Inc.*, 857 F. Supp. 2d 1109, 1113 (D. Or. 2012). This includes the need to prevent disclosure of information that "could be damaging to reputation and privacy." *Id.* (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 35 (1984) ("There is an opportunity, therefore, for litigants to obtain—incidentally or purposefully—information that not only is irrelevant but if publicly released could be damaging to reputation and privacy.")); *see also Nw. Mem. Hosp. v. Ashcroft*, 362 F.3d 923, 927 (7th Cir. 2004) (noting with approval that the district court "contrasted the dearth of probative value with the potential loss of privacy that would ensue were these medical records used in a case in which the patient was not a party and concluded that the balance of harms resulting from disclosure severely out-weighs the loss to the government through non-disclosure" (quotation marks omitted)).

The party seeking a protective order has the burden of proving "good cause," which requires a showing "that specific prejudice or harm will result" if the protective order is not granted. *In re Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d 417, 424 (9th

Cir. 2011). When evaluating good cause, a district court may be called upon to balance the benefits and burdens of complying with a subpoena. *See, e.g.*, *Peate v. McCann*, 294 F.3d 879, 884 (7th Cir. 2002) ("This court has often endorsed the *in camera* process as it allows the court to engage in a more delicate balancing of the competing interests, rather than deciding a discovery issue based solely on the representations of the parties." (citation and quotation marks omitted)); *Deitchman v. E.R. Squibb & Sons, Inc.*, 740 F.2d 556, 563 (7th Cir. 1984) ("To weigh competing hardships to determine the appropriateness of discovery is clearly within the responsibility of the trial judge, in the first instance."); *Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726, 729 (8th Cir. 2002) (noting that in considering a motion to quash a district court has a "range of choice" and may need to "balance[e] relevant factors"); *Heat & Control, Inc. v. Hester Industries, Inc.*, 785 F.2d 1017, 1024 (Fed. Cir. 1986) (noting that when determining the propriety of a subpoena a court may need to balance the relevance of the discovery sought and its potential hardship to the party subject to the subpoena).

Finally, courts give special consideration to the burdens imposed on nonparties. *See Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir. 1980); *see also Lemberg Law LLC v. Hussin*, 2016 WL 3231300, at *5 (N.D. Cal. June 13, 2016) ("The Ninth Circuit has long held that nonparties subject to discovery requests deserve extra protection from the courts." (citing *United States v. C.B.S., Inc.*, 666 F.2d 364, 371-72 (9th Cir. 1982))). Courts are particularly reluctant to require a nonparty to provide discovery that can be produced by a party. *See Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 577 (N.D. Cal. 2007) ("There is simply no reason to burden nonparties when the documents sought are in possession of the party defendant.").

## DISCUSSION

AGLIC asserts that an insurer has the right to challenge an underlying settlement as unreasonable or the product of fraud or collusion. AGLIC adds that the *Pegatron* Lawsuit involves questions about the liability of Customer to Doe and whether Customer's settlement with Doe was reasonable. Among other things, AGLIC seeks to discover how much mental suffering and anxiety Doe endured and whether she obtained counseling and, if so, with whom. These issues appear to be reasonable and appropriate topics for discovery by AGLIC in the *Pegatron* Lawsuit. That does not necessarily mean, however, that a deposition of Doe, at least in the first instance, is the most appropriate method for AGLIC to learn that information, especially when Doe's risk of embarrassment, oppression, or undue burden is considered.

AGLIC states that it has already offered to forgo videotaping Doe's deposition and has agreed to limit its questioning to four hours. Doe has rejected that offer but has agreed to answer AGLIC's written interrogatories, which the Court presumes means under oath and penalty of perjury. *See* Fed. R. Civ. P. 33(b)(3) ("Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath."). The Federal Rules of Civil Procedure only require a *party* in a lawsuit to answer interrogatories. *See* Fed. R. Civ. P. 33(a)(1) ("Unless otherwise stipulated or ordered by the court, a party may serve on any other party . . . interrogatories . . . ."). Notwithstanding that limitation, nonparty Doe has voluntarily agreed to respond to written interrogatories.

There is, however, a potential wrinkle in merely substituting Doe's written answers given under oath to AGLIC's interrogatories for Doe's deposition. The answers to interrogatories given by a nonparty, even when made under oath, may not necessarily be admissible in evidence in a trial among the parties. The Court can imagine a circumstance in which AGLIC seeks to offer Doe's written answers in evidence against PTSI and PTSI objects to those answers as being

inadmissible hearsay. Because Doe lives and works more than 100 miles from the federal court presiding over the *Pegatron* Lawsuit, Doe likely would be considered an unavailable declarant. Rule 804(b)(1) of the Federal Rules of Evidence provides that *deposition* testimony is not excluded by the rule against hearsay if the declarant is unavailable as a witness, among other conditions. Fed. R. Evid. 804(b)(1). That rule, however, says nothing about interrogatory answers given by an unavailable nonparty declarant, even when made under oath.

To balance AGLIC's legitimate discovery needs with nonparty Doe's legitimate privacy needs and Doe's desire to avoid or minimize embarrassment, oppression, or undue burden, the Court will stage, or phase, AGLIC's requests for discovery from Doe and Doe's obligations to respond. In the first instance, AGLIC may submit written interrogatories to Doe, and Doe shall answer those questions in writing under oath within 14 calendar days. In addition, copies of Doe's answers shall be provided to Pegatron. Further, upon request by Doe, AGLIC, or Pegatron, Doe's answers shall be treated as confidential under the terms of the parties' protective order already entered in the *Pegatron* Lawsuit, subject to any further order by the court in that case.

After AGLIC receives Doe's answers, AGLIC may be satisfied and not need any further discovery from Doe. Further, upon receiving Doe's answers, AGLIC may decide that it needs to introduce those answers in evidence in the *Pegatron* Lawsuit. Perhaps a stipulation can be reached between AGLIC and Pegatron, either to treat those answers as stipulated testimony or even as stipulations of fact. In that event, nothing further likely will be needed from Doe. It might also be possible that AGLIC, upon receiving Doe's answers, might need to ask Doe certain follow-up questions in writing. If that need arises, Doe shall *promptly* answer those

follow-up questions in writing and under oath. After that, it is possible that nothing further will be needed from Doe.

It is also possible, however, that after AGLIC receives Doe's written answers to AGLIC's initial interrogatories or follow-up questions, or after AGLIC confers with Pegatron about potential stipulations, the need for AGLIC to take the deposition of Doe will remain. In that event, AGLIC may request from this Court leave to depose Doe. If AGLIC requests such leave, AGLIC must inform this Court in AGLIC's request precisely what it still needs to ask Doe at deposition and why Doe's written answers to AGLIC's interrogatories do not suffice. After hearing any response from Doe, the Court will consider ordering Doe to appear for deposition under appropriate conditions. Those conditions might include having the deposition taken in the Court's conference room with the Court supervising the deposition to ensure that the rights and needs of Doe, AGLIC, and Pegatron are all appropriately considered and balanced.

## CONCLUSION

Nonparty Jane Doe's Motion to Quash or Modify Deposition Subpoena and for Protective Order (ECF 3) is GRANTED IN PART as stated in this Opinion and Order. In addition, because Pegatron has not yet appeared in this matter before this Court, AGLIC's counsel is directed promptly to provide a copy of this Opinion and Order to counsel for Pegatron in the underlying *Pegatron* Lawsuit.

**IT IS SO ORDERED.**

DATED this 29th day of April, 2019.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge